**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Alexandra Haase,** *on behalf of*
*herself and all others similarly*
*situated,*

      **Plaintiff,**

      **v.**

**Cameron Mitchell Restaurants,**
**LLC,**

      **Defendant.**

**Case No. 2:23-cv-1316**

**Judge Michael H. Watson**

**Magistrate Judge Jolson**

**OPINION AND ORDER**

Cameron Mitchell Restaurants, LLC ("Defendant") moves to dismiss Alexandra Haase's ("Plaintiff") Amended Complaint. ECF No. 18. For the following reasons, Defendant's motion is **DENIED.**

**FACTS[1]**

During the relevant times, Plaintiff worked as a server at one of Defendant's restaurants. Am. Compl. ¶ 16, ECF No. 14. Because servers receive tips, Defendant pays servers, including Plaintiff, at an hourly rate below the minimum wage. *Id.* ¶¶ 17–18. Plaintiff alleges that Defendant requires servers to spend time on non-tip-producing work, like cleaning and opening and closing duties, while paying the servers below minimum wage. *Id.* ¶¶ 19–27.

---

[1] The Court accepts Plaintiff's factual allegations as true for the purposes of Defendant's motion. *Warner v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022).

Based on these allegations, Plaintiff asserts claims on behalf of herself and others similarly situated under the Fair Labor Standards Act ("FLSA") and an analogous state law. *Id.* ¶¶ 30–67.

## MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 18.

## I. STANDARD OF REVIEW

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). At the motion-to-dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Warner v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted).

However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II.     ANALYSIS

The Court considers Plaintiff's federal claim before turning to the state-law claim.

### A.     Federal Claim

#### 1.     Legal Background

Before addressing the merits of Plaintiff's FLSA claim, the Court will first provide an overview of the relevant law.

##### a.     The FLSA

The FLSA "mandates that employers pay a federal minimum wage and overtime to certain types of employees." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (citing 29 U.S.C. §§ 206(a), 207(a)). This case deals with the FLSA's minimum wage requirement.

The FLSA generally requires employers to pay applicable employees a wage of at least $7.25 an hour.  29 U.S.C. § 206(a)(1)(C).  There is an exception for "tipped employees," which the FLSA defines as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(m), (t).  This exception is sometimes called a "tip credit."  *See, e.g.*, *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 615 (9th Cir. 2018).  An employer may pay tipped employees as low as $2.13 an hour, but, if

the employee's tips fail to bring the employee's overall wage to at least $7.25 per hour, the "employer must supplement the tipped employee's wages to equal the minimum wage." *Wysincavage v. Penn Nat'l Gaming, Inc.*, No. 2:16-CV-1063, 2017 WL 5129003, at *2 (S.D. Ohio Oct. 23, 2017); *see also* 29 U.S.C. § 203(m).

### b. The 1967 Regulation

In 1967, the Department of Labor ("DOL") "promulgated a series of regulations to implement the tip credit." *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1172 (11th Cir. 2021). Relevant here is the "dual jobs regulation" (the "1967 Regulation").

The 1967 Regulation covered employees who worked in "dual jobs," meaning they performed tipped and non-tipped work. 29 C.F.R. § 531.56(e) (1967 version). The 1967 Regulation distinguished between someone who worked in two distinct jobs (*e.g.*, working as a server and as a maintenance employee), and someone who worked in only one job but had overlapping duties (*e.g.*, a server who spends some time cleaning tables). *Id*. For the former category, employers could not use the tip credit for the time the employee worked the non-tipped position. *Id*. For the latter, the employer could use the tip credit for "related duties in an occupation that is a tipped occupation," even if those duties are "not by themselves [] directed toward producing tips." *Id*.

### c.  The 1988 Guidance

In 1988, the DOL issued guidance interpreting the 1967 Regulation (the

"1988 Guidance").  The 1988 Guidance became known as the "80/20 rule" and is

distilled to two rules:

> (1) An employer cannot take the tip credit for time an employee spent performing duties that were unrelated to the tipped occupation.

> (2) An employer can take the tip credit for time an employee performed duties related to her tipped occupation, provided that those duties were not performed by that employee for more than twenty percent of her working hours.

*Rafferty*, 13 F.4th at 1175 (citation omitted).

### d.  The 2018 Guidance

In 2018, the DOL rescinded the 1988 Guidance with new guidance (the

"2018 Guidance").  The 2018 Guidance "jettisoned any limitation on the amount

of duties related to a tip-producing occupation."   *Rafferty*, 13 F.4th at 1176.

Under the 2018 Guidance, as long as a tipped employee performed "duties

related to a tip-producing occupation" contemporaneously with "direct customer-

service duties," the employer could take the tip credit for all time spent on those

related, but not tip-producing, duties.  *Id.* (quoting the 2018 Guidance).   The

2018 Guidance also instructed that an online database known as "O*NET" would

be used to determine whether a particular duty was "related to a tip-producing

occupation."  *Id.* (quotation marks and citations omitted).

### e.  The 2021 Regulation

In 2021, after a notice and comment period, the DOL promulgated a new

"dual jobs rule" (the "2021 Regulation").  *See* 29 C.F.R. § 531.56.  Relevant here, the 2021 Regulation allows employers to use the tip credit for an employee's tip-producing work and for work that "directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time."  29 C.F.R. § 531.56(f).  The 2021 Regulation explains than "an employee has performed work for a substantial amount of time" if either of the following apply:

> (i) The directly supporting work exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit.  The employer cannot take a tip credit for any time spent on directly supporting work that exceeds the 20 percent tolerance.  Time for which an employer does not take a tip credit is excluded in calculating the 20 percent tolerance; or
>
> (ii) For any continuous period of time, the directly supporting work exceeds 30 minutes.  If a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes.  Time in excess of the 30 minutes, for which an employer may not take a tip credit, is excluded in calculating the 20 percent tolerance in paragraph (f)(4)(i) of this section.

29 C.F.R. § 531.56(f)(4).

In addition, the 2021 Regulation provides that an employer may not take the tip credit for any work "not part of the tipped occupation," which is defined as "any work that does not provide service to customers for which tipped employees receive tips and does not directly support tip-producing work."  29 C.F.R. § 531.56(f)(5).

As another federal court recently summarized:

> [The 2021 Regulation] sets out a three-part framework to classify tipped work: (1) work that is part of the tipped occupation and produces tips; (2) work that is part of the tipped occupation and directly supports tip-producing work (subject to the 30-minute rule [and the 80/20 rule]) though it is not directly tip-producing; and (3) other, non-tipped work that is not subject to the tip credit.

*Rest. L. Ctr. v. United States Dep't of Lab.*, No. 1:21-CV-1106-RP, 2023 WL 4375518, at *2 (W.D. Tex. July 6, 2023).

### 2. Discussion

Having outlined the relevant rules and guidance, the Court will now turn to the heart of Defendant's motion: whether those rules and guidance are entitled to deference.

### a. Is the 1967 Regulation Entitled to *Chevron* Deference?

Under *Chevron* deference, "[s]tatutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296 (2013). A *Chevron* analysis involves two (or, perhaps, three) steps. At "Step Zero," courts consider whether "Congress delegated authority to the agency generally to make rules carrying the force of law," and whether the agency "interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).

The remaining steps of the *Chevron* framework are as follows. At Step One, a court asks "whether Congress has directly spoken to the precise question at issue"; that is, a court asks whether the relevant statute is ambiguous.

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If the answer is "no," "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. However, if a court concludes that the relevant statute is ambiguous, the court "does not simply impose its own construction on the statute[.]" *Id*. Instead, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. This is Step Two.

### i.        Step Zero

Defendant first argues the Court should not give the 1967 Regulation *Chevron* deference because it was promulgated without going through a notice and comment period.[2] *E.g.*, Mot. 20–22, ECF No. 18. That argument "is decades too late." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 621 (9th Cir. 2018) (addressing the same argument) (citing cases).

Procedural challenges to an agency action are subject to a six-year statute of limitations. *Hodgkins v. Fudge*, 850 F. App'x 423, 426 (6th Cir. 2021). The limitation period begins to run when there is a "final agency action," which includes the issuance of a regulation. *Id.*; *see also Linney's Pizza, LLC v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 3:22-CV-00071-GFVT, 2023 WL 6050569, at

---

[2] It is unclear whether Defendant aims this argument at *Chevron* Step Zero or as a more general argument. However construed, the argument fails.

*3 (E.D. Ky. Sept. 15, 2023) (concluding that an Administrative Procedure Act claim accrued when the at-issue regulation was published).

Defendant argues against this conclusion. According to Defendant, its procedural claim accrued when its rights were affected by the 1967 Regulation (although Defendant does not identify when that happened) and that, under *that* accrual rule, its claim is timely. Reply 3–4, ECF No. 28. Even assuming Defendant has proposed a correct accrual rule, Defendant has existed in one form or another for at least twenty-five years. *See, e.g.*, Ohio Secretary of State entity Nos. 977106, LL4876.[3] Throughout that time, Defendant was in the restaurant business and, presumably, employed servers and thus was subject to the 1967 Regulation (either because it took a tip credit for the servers or because it elected to not take a tip credit because of 1967 Regulation and accompanying guidance). *Id.* Thus, Defendant's "interests" have been affected by the 1967 Regulation for decades, even if no one else has brought a legal action against Defendant. Accordingly, Defendant's notice-and-comment challenge to the 1967 Regulation fails, and the Court proceeds to *Chevron* Step One.[4] *See Linney's*

---

[3] A court may consider "items in the public record" that are "not subject to reasonable dispute" without converting a motion to dismiss into one for summary judgment. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)

[4] It is not entirely clear whether Defendant argues that, regardless of the alleged notice-and-comment issue, the 1967 Regulation is not entitled to *Chevron* deference. *Compare* Mot. 20–22, ECF No. 18 *with* Reply 4–6, ECF No. 28. In the interest of thoroughness, the Court conducts a full *Chevron* analysis.

*Pizza, LLC*, 2023 WL 6050569, at *3 (rejecting a similar "as applied" accrual rule for an Administrative Procedure Act claim).

### ii.    Step One

At *Chevron* Step One, the Court must decide whether "Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). In other words, the Court must decide whether the statute at issue is ambiguous. *Id.* In making that decision, courts rely on "traditional tools of statutory construction[.]" *Id.* at 842, n. 9.

Other courts have concluded that the at-issue provision of the FLSA, 29 U.S.C. § 203(t), is ambiguous. *See Marsh*, 905 F.3d at 621–22; *Rest. L. Ctr.*, 2023 WL 4375518, at *6–7; *Goodson v. OS Rest. Servs., LLC*, No. 5:17-cv-10-Oc-37PRL, 2017 U.S. Dist. LEXIS 71923, at *10–13 (M.D. Fla. May 9, 2017). Another district court explained that conclusion as follows:

> The statute refers to an occupation as one in which an employee customarily and regularly receives tips as part of their income. . . . The statute also specifies that an employee is not a "tipped employee" for which an employer can take a tip credit unless the employee is "engaged in" a tipped occupation. . . . However, as DOL persuasively points out, the statute fails to specify the particular work associated with such an occupation. The statute also fails to clarify when such an employee may be considered "engaged in" that work. These gaps in the text of the statute leave DOL the task of working out the details for how to determine what it means to be "engaged in an occupation" where one regularly receives tips. . . . This task includes looking at the specific work that employees are occupied with and whether that work can be considered part of the tipped occupation. The Court thus finds that the text of the FLSA is ambiguous and does not expressly speak to the issue at hand.

*Rest. L. Ctr.*, 2023 WL 4375518, at *7 (internal citations omitted).

The Court agrees with the reasoning of *Marsh* and *Restaurant Law Center* and holds that the FLSA "does not expressly speak to the issue at hand." *Id.*

### iii.     Step Two

At *Chevron* Step Two, the Court considers whether the agency's interpretation of the ambiguous statute is "permissible." *Chevron*, 467 U.S. at 843. The agency's interpretation need not be "the only one it permissibly could have adopted" or even "the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843, n. 11.

Examining this issue, the Ninth Circuit concluded that the 1967 Regulation is a permissible interpretation of the FLSA. *See Marsh*, 905 F.3d at 622–23.

The Ninth Circuit explained that conclusion as follows:

> The 1966 amendments to the FLSA were intended to "improve living standards by eliminating substandard working conditions in employment" and to bring the law up to date with the "advancing economy," which had outpaced the FLSA's worker protections. H.R. Rep. No. 89-1366, at 10 (1966). Later amendments to the FLSA stressed the importance of guaranteeing "a fair day's pay for a fair day's work." H.R. Rep. No. 93-913, at 8 (1974). The [1967 Regulation], which was promulgated to give effect to new statutory provisions addressing tipped employees, was neither an arbitrary reversal of a prior agency position nor "manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778. Confronted with a gap in the FLSA's coverage of dual job employees, the DOL reasonably exercised its authority to fill that gap by ensuring that employees working in tipped and untipped occupations would not be shortchanged by their employers.

*Marsh*, 905 F.3d at 622.

This Court agrees with the Ninth Circuit and other courts that have addressed this issue and concludes that the 1967 Regulation is "a reasonable choice within a gap left open by Congress[.]" *Chevron*, 467 U.S. at 866. Thus, the 1967 Regulation is entitled to *Chevron* deference.

### b.    Is the 1988 Guidance entitled to *Auer* Deference?

Defendant also argues that the 1988 Guidance is not entitled to *Auer* deference, which was established in *Auer v. Robbins*, 519 U.S. 452 (1997). Where *Chevron* deference applies to an agency's interpretation of its governing statutes, *Auer* deference applies to an agency's interpretation of its own regulations.

As an initial matter, it is unclear whether the Sixth Circuit ever gives *Auer* deference to DOL guidance—like the 1988 Guidance—contained in the Field Operations Handbook ("FOH"). *See Stein v. HHGREGG, Inc.*, 873 F.3d 523, 531–34 (6th Cir. 2017). In *Stein*, the Sixth Circuit explained that *Chevron* deference is not appropriate for agency interpretations of their regulations contained in the FOH. *Id*. at 531–32. Of course, *Auer*, not *Chevron*, deference generally applies to an agency interpretation of its regulations and, therefore, *Stein*'s conclusion merely restates this general rule. Some language in *Stein*, however, suggests that FOH Guidance should not be given even *Auer* deference and should instead be considered persuasive authority. *Id*.

Here, the Court need not decide through what lens it should view the 1988 Guidance (and the 2018 Guidance, discussed below). Here, for all the reasons

the Court does, or does not, give *Auer* deference to the 1988 or 2018 Guidance, it parallelly does, or does not, find the 1988 or 2018 Guidance persuasive.

When conducting an *Auer* analysis, the Court must first determine whether the at-issue regulation is "genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). "If uncertainty does not exist, there is no plausible reason for deference." *Id.* at 2415. If the regulation is ambiguous, the agency's reading of the regulation "must still be 'reasonable.'" *Id.* (citation omitted). That is, the reading "must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id.* at 2416. Finally, even if an agency's reading is reasonable, it still may not be entitled to deference. *Id.* When applying *Auer*, "a court must make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Id.*

### i. Is the 1967 Regulation Ambiguous?

As with a *Chevron* analysis, a court should "exhaust all the traditional tools of construction" when evaluating whether a regulation is ambiguous. *Id.* at 2415. Other courts have already determined that the 1967 Regulation is ambiguous. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878–81 (8th Cir. 2011); *Marsh*, 905 F.3d at 623–25.

The Ninth Circuit explained that the 1967 Regulation is ambiguous for several reasons. *Marsh*, 905 F.3d at 624–25. First, the 1967 Regulation "does not offer a precise definition for 'occupation,'" nor does it "explain how to classify

the person's occupation—whether through official title, expected duties, or some other method." *Id*. at 624. Similarly, the 1967 Regulation does not define what "part of the time" and "occasionally" mean and, therefore, leave "undefined" the line between "single-job employees who only occasionally complete related tasks" and the "dual-job employees who regularly do." *Id*. at 624–25. Finally, the 1967 Regulation does not define "related duties." *Id*. at 625. Again, the Court agrees and concludes the 1967 Regulation is ambiguous.

ii.    **Is the 1988 Guidance a Reasonable Reading of the 1967 Regulation?**

For an agency's interpretation of its regulation to be entitled to deference, the reading must be reasonable. *Kisor*, 139 S. Ct. at 2415–16. That is, the reading "must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id*. at 2416. At issue here is whether the 1988 Guidance reasonably interpreted the temporal terms (*e.g.*, "occasionally") in the 1967 Regulation.

The 1988 Guidance is reasonable. The 1967 Regulation uses words like "occasionally" or "part of the time," but it does not define what those words mean. *Fast*, 638 F.3d at 881. The 1988 Guidance reasonably fills in that definitional gap by using 20% as the line between "occasional" and "more than occasional." *Id*. In addition, the DOL uses "a 20 [%] threshold to delineate the line between substantial and nonsubstantial work in various contexts within the FLSA." *Id*. In sum, the 1988 Guidance is "not inconsistent" with the 1967 Regulation and is a

"reasonable interpretation of the terms part of the time and occasionally." *Id.* (cleaned up).

At bottom, 1988 Guidance is a reasonable interpretation of the 1967 Regulation.

### iii. Does the Context of the 1988 Guidance entitle it to Deference?

When examining whether the context of an agency's interpretation entitles the interpretation to deference, the Supreme Court has identified "some especially important markers." *Kisor*, 139 S. Ct. at 2416. First, "the regulatory interpretation must be one actually made by the agency." *Id.* That is, it "must be the agency's authoritative or official position," rather than an "ad hoc statement not reflecting the agency's views." *Id.* (cleaned up). Second, "the agency's interpretation must in some way implicate its substantive expertise." *Id.* at 2417. Lastly, "an agency's reading of a rule must reflect fair and considered judgment," meaning that a court "should decline to defer to a merely convenient litigating position or post hoc rationalization advanced to defend past agency action against attack." *Id.* (cleaned up).

Here, all markers indicate that *Auer* deference is appropriate. First, the 1988 Guidance was an "official position" of the DOL and was "understood to make authoritative policy in the relevant context." *Kisor*, 139 S. Ct. at 2416. Second, the 1988 Guidance certainly falls within the DOL's substantive expertise: issues related to labor and employment. Finally, the 1988 Guidance reflects "fair

and considered judgment." *Id.* at 2417. The DOL maintained the 1988 Guidance

consistently for thirty years[5] and, as discussed below, eventually turned it into a

formal rule. Thus, the 1988 Guidance is not "merely [a] convenient litigating

position." *Id.* Accordingly, the context of the 1988 Guidance shows that it is

entitled to deference.

In sum, the 1988 Guidance is entitled to *Auer* deference.

###### c. Is the 2018 Guidance entitled to *Auer* Deference?

To the extent Defendant argues that the 2018 Guidance is entitled to *Auer*

deference, the Court disagrees. As the Eleventh Circuit has observed "district

courts nearly unanimously concluded that the 2018 Opinion Letter was not

entitled to deference under *Auer*[.]" *Rafferty*, 13 F.4th at 1176–77 (citation

omitted). One district Court explained its decision to not apply *Auer* deference as

follows:

> The Court cannot accord the 2018 DOL Letter *Auer* deference for two
> primary reasons. First, the Letter directly contradicts the 20%
> guideline set over three decades ago. Prior to the Letter, employees
> knew that the tip credit applied where tipped work represented 80%
> of their hours employed. The 2018 DOL Letter erases that
> longstanding benchmark without forewarning . . . and thus constitutes
> unfair surprise.
>
> Second, the 2018 DOL Letter is plainly contrary to the relevant
> regulation interpreting "related duties." The regulation describes
> "related duties" as work performed "occasionally" and "part of [the]
> time." . . . The DOL intended, therefore, to impose some limitations
> on "related duties" in terms of the amount of time an employee spends

---

[5] The DOL had a few, brief, "blips" when they backed away from the 1988 Guidance.
*Rafferty*, 13 F.4th at 1175–76. Yet these brief periods of time do not move the needle
on whether the DOL has maintained a consistent position.

performing such duties, and thus, for which employers could take advantage of the tip credit even though employees were performing untipped work. . . . That the DOL imposed some limitations on "related duties" is also consistent with the remedial purpose of the FLSA. The FLSA, at bottom, ensures a fair minimum wage. Employers may take advantage of the tip credit only where employees earn sufficient tips to subsidize the wage. If, as the 2018 DOL Letter states, no quantitative limits exist on an employer's imposition of "related" but untipped duties, then employees could be deprived of the regular minimum wage even if only a fraction of the employee duties were tipped. This interpretation of the regulation flatly contradicts the purpose of the FLSA and thus cannot stand. . . . Because the 2018 DOL Letter is "inconsistent with the regulation," the Court cannot accord it *Auer* deference.

*Flores v. HMS Host Corp.*, No. 8:18-CV-03312-PX, 2019 WL 5454647, at *5 (D. Md. Oct. 23, 2019) (internal citations omitted).

This Court agrees with *Flores*. Although, as explained above, the 1967 Regulation is ambiguous, the 2018 Guidance is not a reasonable interpretation of that Rule. Accordingly, the Court will not give the 2018 Guidance *Auer* deference.

Similarly, the 2018 Guidance is not entitled to the lower-level "*Skidmore*" deference because it "rests on faulty reasoning" and "distorts the import of the judicial determinations on which it relies." *Id.* at *6. Thus, the Court will not give the 2018 Guidance any deference, nor does the Court give it "any persuasive value." *Id.* (citing cases). Accordingly, the Court will not rely on the 2018 Guidance when examining Plaintiff's claims.

### d. Is the 2021 Regulation entitled to *Chevron* Deference?

Defendant argues that the 2021 Regulation is not entitled to *Chevron* deference for a variety of reasons. *E.g.*, Mot. 31–47, ECF No. 18.

### i. Step Zero

At *Chevron* Step Zero, the Court must determine whether the FLSA delegated authority to DOL to promulgate the 2021 Regulation and whether the DOL actually promulgated the 2021 Regulation pursuant to that authority. *Mead*, 533 U.S. at 226–27. The Court finds that Congress did so. First, when "Congress passed the FLSA amendments concerning tipped employees," it expressly authorized the DOL to "promulgate necessary rules, regulations, or orders with regard to [those] amendments." *Rest. L. Ctr.*, 2023 WL 4375518, at *5 (quoting the 1966 Amendments to the FLSA). When the DOL promulgated the 2021 Regulation, it cited to this grant of authority. *Id.*; *see also* 86 FR 60114-01. Thus, "Congress delegated authority to the agency generally to make rules carrying the force of law," and the DOL "interpretation claiming deference was promulgated in the exercise of that authority." *Mead*, 533 U.S. at 226–27. Accordingly, the 2021 Regulation satisfies *Chevron* Step Zero.

Defendant argues against this conclusion. According to Defendant, the DOL overstepped whatever authority Congress delegated by defining terms other than the terms in the statute. That is, Defendant argues that Congress delegated

the authority to define "engaged in an occupation," but that DOL instead defined "tipped occupation" and "engaged in a tipped occupation."

The Court concludes these arguments are better discussed at Step Two and thus continues with the *Chevron* analysis.  *See Rest. L. Ctr.*, 2023 WL 4375518, at *5 ("To the extent Plaintiffs argue that DOL's use of the term 'tipped occupation' supplants the FLSA's statutory definition with a different term, or that the Rule is not based on a permissible construction of the statute, these arguments are more properly raised at step two of the *Chevron* analysis.").

### ii.     Steps One and Two

As explained above, the FLSA is ambiguous.  Thus, the Court moves on to Step Two.

For all the same reasons the 1967 Regulation deserves *Chevron* deference, so does the 2021 Regulation.  For the last thirty-five years, the DOL has consistently used the 80/20 rule to help achieve the FLSA's goals of guaranteeing "a fair day's pay for a fair day's work."  H.R. Rep. No. 93-913 (1974).  As with the 1967 Regulation, the 2021 Regulation gives effect and clarification to the tipped employees statutory provisions.  The FLSA does not define what it means to be "engaged in an occupation in which [the employee] customarily and regularly receives more than $30 a month in tips."  The 2021 Regulation reasonably provides that definition based on the types of tasks an employee performs (*i.e.*, tip-producing task, directly supporting non-tip-producing tasks, and not-directly supporting non-tip producing tasks).  That the 2021

Regulation, in defining "engaged in an occupation," *also* defines "tipped occupation" does not move the 2021 Regulation into unreasonable territory. Thus, with the 2021 Regulation, the DOL "reasonably exercised its authority to fill [the gap in the FLSA] by ensuring that employees working in tipped and untipped occupations would not be shortchanged by their employers." *Marsh*, 905 F.3d at 622. Further, given the long, almost entirely consistent, history of the 80/20 Rule, the 2021 Regulation was not "an arbitrary reversal of a prior agency position[.]" *Marsh*, 905 F.3d at 622. Neither is the 2021 Regulation "manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Accordingly, the 2021 Regulation is entitled to *Chevron* deference.

Defendant disagrees and argues that the 2021 Regulation fails at Step Two because it is arbitrary and capricious. Mot. 42–47, ECF No. 18. Defendant contends the 2021 Regulation is arbitrary and capricious because, according to Defendant, the DOL did not conduct any fact-finding, the DOL ignored its own source of occupational information, O*NET, the DOL relied on outdated data, and the 2021 Regulation is internally inconsistent. *Id*.

Another district court has considered, and rejected, each of these arguments. *Rest. L. Ctr.*, 2023 WL 4375518, at *10–11. This Court agrees. At the heart of each of Defendant's contentions is that, at least according to Defendant, the DOL did not use *best* practices or rely on the *best* basis. But an agency action need not be the "best one possible" or even "better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016), *as*

*revised* (Jan. 28, 2016).  Instead, a court will uphold an agency action "if the agency has examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made."  *Id.* (cleaned up).  Here, the 2021 Regulation meets that rationality standard.  *See Rest. L. Ctr.*, 2023 WL 4375518, at *10–11.

Accordingly, the 2021 Regulation is entitled to *Chevron* deference.

### e.  Does the 2021 Regulation Implicate the major questions doctrine?

Defendant also argues that the 2021 Regulation implicates the major questions doctrine and, therefore, any deference to the 2021 would be inappropriate.  Mot. 47–54, ECF No. 18.  The major questions doctrine "applies in extraordinary cases in which the history and the breadth of the authority that the agency has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority."  *Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755, 767, n. 3 (6th Cir. 2023) (cleaned up; quoting *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2608 (2022)).

The 2021 Regulation does not implicate the major questions doctrine.  See *Rest. L. Ctr.*, 2023 WL 4375518, at *12–13.  First, the 2021 Regulation has a meaningfully lower economic impact than the "billions" at issue in other cases.  *Id.*  Further, the 2021 Regulation "cannot be said to 'substantially restructure' the

market or invoke any 'newfound power'; nor does it rely on a 'rarely used' or 'ancillary provision' of the law." *Id.* (citing *West Virginia*, 142 S. Ct at 2610).

In sum, the 2021 Regulation is not the sort of "extraordinary case" to which the major questions doctrine applies. Therefore, Defendant's major questions doctrine arguments fall flat.

### 3. Has Plaintiff stated a claim under the FLSA?

Defendant contends that, in any event, Plaintiff fails to state a claim under the FLSA. Mot. 54–57, ECF No. 18. To sum up, the 1967 Regulation and 1988 Guidance controls Plaintiff's FLSA claim based on conduct before late 2021, and the 2021 Regulation governs the claim based on conduct after late 2021. Under both frameworks, an employer may not take a tip credit for directly supporting non-tip-producing work that exceeded 20 percent of the employee's work time or for time spent on non-tipped work.

In the Complaint, Plaintiff alleges that: (1) she and other tipped employees were regularly required to spend more than 20% of their time on tip-supporting work; (2) she and other tipped employees had to complete non-tip supporting work; and (3) Defendant still took a tip credit for all the time she and other tipped employees worked. Am. Compl. ¶ 25–26, ECF No. 14. Plaintiff also provides details about what types of non-tipped work she and others performed. *Id.* ¶¶ 20–21. These allegations are enough to state a claim under the FLSA. *Cf. Forrester v. Am. Sec. & Prot. Serv. LLC*, No. 21-5870, 2022 WL 1514905, at *1

(6th Cir. May 13, 2022) (affirming the dismissal of an FLSA claim when the plaintiff did not allege any details about the allegedly unpaid work).

### B. State Law Claim

Defendant argues that Plaintiff's Ohio-law minimum wage claim must fail because Ohio law does not incorporate the federal rules for tipped employees, including any rules about non-tip-producing work. Mot. 58–64, ECF No. 18. The Court disagrees.

Federal and state courts have repeatedly concluded that "Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions." *Barnes v. Abraham, Inc.*, No. 2:17-CV-279, 2017 WL 5714091, at *2 (S.D. Ohio Nov. 28, 2017); *cf. Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 69, n. 2 (6th Cir. 1997) (explaining, in the context of overtime claims, that because Ohio's wage and hour laws "parallel[] the FLSA," the court approached the issues "in a unitary fashion"). This conclusion comports with the language of Ohio's wage and hour laws, which expressly incorporate the FLSA's definition of "employee," which necessarily includes "tipped employees." Ohio Const. Art. II, § 34a (proving that "employee" and other terms have the "same meanings as under the federal Fair Labor Standards Act"); *see also Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3–5 (S.D. Ohio June 21, 2016) (evaluating an FLSA and Ohio law "tip credit" claim under the same rubric).

Contrary to Defendant's arguments, nothing here demands a deviation from this precedent. Also, for all the reasons Plaintiff states a claim under the FLSA, Plaintiff likewise states a claim under Section 34a. Accordingly, as to the state-law claim, Defendant's motion is **DENIED**.

## MOTION TO STRIKE CLASS ALLEGATIONS

Plaintiff's Amended Complaint asserts a violation of Section 34a of Article II of the Ohio Constitution ("Section 34a"), which is Ohio's constitutional minimum wage provision. Am. Compl. ¶¶ 61–67, ECF No. 14. Ohio also has a statutory minimum wage provision, the Ohio Minimum Wage Fair Standards Act (the "Statute"), found at Ohio Revised Code § 4111.01 *et seq.* The *statutory* minimum wage provision includes a provision that only those who affirmatively "opt in" to an action may be a party to that action (mirroring the FLSA's opt-in procedure). Ohio Rev. Code § 4111.14(K). Defendant argues that this procedural requirement applies to the *constitutional* provision, too. Mot. 64–66, ECF No. 18.

This Court has already considered this issue and has determined that Ohio's statutory opt-in procedure does not apply to a claim brought under only Section 34a. *See Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487–89 (S.D. Ohio 2014) (considering the issue in the context of a declaratory judgment); *Brenneman v. Cincinnati Bengals, Inc.*, No. 1:14-CV-136, 2014 WL 5448864, at *4–6 (S.D. Ohio Oct. 24, 2014) ("Defendant next argues that Plaintiff's Rule 23 class action allegations should be dismissed because OMFWSA § 4111.14(K),

as an implementing provision of Article II, § 34a, provides for only opt-in collective actions for minimum wage violations . . . "[T]he Court disagrees.")

Nonetheless, Defendant argues that the statutory opt-in procedure should apply to Plaintiff's state-law claim (and, therefore, that Plaintiff cannot pursue that claim through a Rule 23 class action). *E.g.*, Mot. 64–66, ECF No. 18. Defendant first argues that Section 34a is not self-executing and, thus, all of the implementing statutory provisions—including the opt-in procedure—would apply to claims brought under Section 34a. *Id*. Defendant alternatively argues that even if Section 34a is self-executing, the implementing statutes still apply to any claims brough under Section 34a. *Id*.

Starting with the first issue, this Court has repeatedly ruled that Section 34a is self-executing. *See Castillo*, 302 F.R.D. at 487–89; *Brenneman*, 2014 WL 5448864, at *3–4; *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2018 WL 5800594, at *6 (S.D. Ohio Nov. 6, 2018). The Court sees no reason to depart from its prior decision and, therefore, concludes that Plaintiff may pursue her Ohio constitutional claims through a Rule 23 class action.

Defendant disagrees, arguing that some of the Ohio precedent that *Castillo* relies on has been overruled. Reply 23–27, ECF No. 28. This is a correct statement: *Castillo* relies in part on *Haight v. Cheap Escape Co.*, 11 N.E.3d 1258, 1260 (Ohio Ct. App. 2014) ("*Haight 1*") which was reversed and remanded by the Supreme Court of Ohio in *Haight v. Minchak*, 58 N.E.3d 1135 (Ohio 2016) ("*Haight 2*"). *Castillo*, 302 F.R.D. at 488–89. However, the Supreme Court of

Ohio overruled *Haight 1* for reasons other than the issue *Castillo* relies on. *See*

*generally*, *Haught 2*, 58 N.E.3d 1135. Indeed, the Supreme Court of Ohio

expressly declined to decide that issue. *Id.* at 1141. Thus, that *Haight 1* was

overruled on other grounds does not cast doubt on *Castillo*'s validity.

Defendant alternatively argues that, even if Section 34a is self-executing,

the implementing statutes—including the opt-in procedure—still apply. This

argument fails to persuade. As explained in *Castillo*, "Section 34a creates a

precise framework, describing who is entitled to minimum wages, when its terms

take effect, how to enforce the rights it establishes, setting forth a cause of

action, damages, and a limitations period." *Castillo v. Morales, Inc.*, 302 F.R.D.

480, 489 (S.D. Ohio 2014). Thus, even though the statute mirrors Section 34a

and "governs alleged violations of *that* section, it does not supplant a plaintiff's

right to proceed directly under [Section 34a]." *Brenneman*, 2014 WL 5448864, at

*5 (emphasis in original). In sum, the statutory opt-in provision does not apply to

claims brought directly under Section 34a. *See id*. (concluding that an argument

that Section 34a "should be construed to include the consent requirement" of the

implementing statute is "not well taken").

Accordingly, the Court will not strike Plaintiff's class allegations. The Court

expresses no opinion on the ultimate propriety of class certification in this case,

however.

## CONCLUSION

For these reasons, Defendant's motion is **DENIED**.  The Clerk shall

terminate ECF No. 18.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**